NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

AMANDA KAISER, *Petitioner/Appellee*,

*v.*

DOMINIC GAMARANO, *Respondent/Appellant*.

No. 1 CA-CV 25-0406 FC

FILED 06-11-2026

Appeal from the Superior Court in Maricopa County
No. FC2023-050976, FC2023-091515
The Honorable Colleen E. O'Donnell-Smith, Judge

**AFFIRMED**

COUNSEL

Sullivan Schick, PLC, Glendale
By Jennifer Olivia Gage
*Counsel for Petitioner/Appellee*

Dominic Gamarano, Buckeye
*Respondent/Appellant Pro Se*

_____

**MEMORANDUM DECISION**

Chief Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Veronika Fabian joined.

_____

**H O W E**, Judge:

¶1         Dominic Gamarano ("Father") appeals the family court's order granting final legal decision-making authority on education and attorney's fees to Amanda Kaiser ("Mother"). We affirm.

### FACTS AND PROCEDURAL HISTORY

¶2         Father and Mother are the parents of two minor children, born June 2016 and August 2017. The parties were never married but were in a relationship until 2020. They split parenting time without involving the courts until conflict arose in April 2023. Both parties then petitioned the family court to establish joint legal decision-making, equal parenting time, and child support.

¶3         Leading up to trial, both parents agreed to joint legal decision-making authority, but disputed who should have final say on education. The children were attending Catholic school, but Father wished to find another, non-religious school because of the cost increases. Father also claimed one child was being bullied and the other was having behavioral issues that the school was not equipped to handle. Mother alleged that Father's change of heart was attributable to his new wife.

¶4         On the original trial date, Father alleged that the Mother's new husband ("Stepfather") may have molested the parties' younger child. Father based his accusation on his belief that the child was sleeping in the same bed as Stepfather, that the child was wetting himself, and that Stepfather posted pictures on Facebook touching the child's butt. The court stayed the trial and appointed an advisor to investigate.

¶5         The advisor reported that the child did not disclose any abuse during their forensic interview and that police and the Department of Child Safety closed their investigations. Father also first heard about Stepfather and the child sleeping in the same bed over a year before telling the family court. He confronted Mother at the time, but she has continually denied it.

Lastly, the advisor concluded that the Facebook picture was an appropriate family photo.

¶6        With the investigation resolved, the parties proceeded to trial in February 2025. As relevant here, the family court granted joint legal decision-making to both parties, but Mother was awarded final decision-making authority for education. The court also ordered that the children should remain in their Catholic school for the rest of the school year, but that Mother must bear the full tuition cost going forward. If Mother was unwilling to pay the cost, the children would need to change schools. The court emphasized that Mother must act in good faith on education-based decisions before making the final decision, and if she fails to act in good faith then the court will take that into consideration for future decisions about legal decision-making.

¶7        The family court also awarded Mother a portion of her attorney's fees pursuant to A.R.S. § 25-415 because Father knowingly presented a false claim of sexual abuse. The court found that he acted unreasonably by alleging the sexual abuse on the first day of trial when he had the concerns for over a year. It concluded that Father did not have a reasonable basis for the allegation and was attempting to mislead the court to get legal decision-making authority.

¶8        Father timely appealed. We have jurisdiction. A.R.S. §§ 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

¶9        Father challenges the family court's award of final legal decision-making authority regarding education and sanction of attorney's fees.

## I.        Final Decision-Making Authority

¶10        Father challenges the sufficiency of the family court's factual findings for legal decision-making. We review the award of legal decision-making authority for abuse of discretion. *Gish v. Greyson*, 253 Ariz. 437, 444 ¶ 31 (App. 2022). "An abuse of discretion exists when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence to support the decision." *Little v. Little*, 193 Ariz. 518, 520 ¶ 5 (1999) (cleaned up).

¶11        "In a contested legal decision-making . . . case, the court shall make specific findings on the record about all relevant factors and the

reasons for which the decision is in the best interests of the child." A.R.S. § 25-403(B). The court is required to consider all relevant factors, including the 11 enumerated factors in § 25-403(A). As relevant here, joint legal decision making with final decision-making authority "creates shared legal decision-making with the possibility that one parent will exercise a superior right if the parents cannot reach a joint agreement in good faith." *Nicaise v. Sundaram*, 245 Ariz. 566, 568–69 ¶ 14 (2019).

¶12        Here, the family court made factual findings on all 11 enumerated factors in its legal decision-making analysis. The record supports the court's factual findings and conclusion, and Father does not identify any particular factor on which the court erred.  Thus, we discern no abuse of discretion.

¶13        Father argues that the family court's analysis was insufficient because it did not consider the factors listed in *Jordan v. Rea*, 221 Ariz. 581, 590 ¶ 23 (App. 2009). The factor test set out in *Jordan* is merely the § 25-403(A) best-interests factors as applied to educational placement. *Id.* Educational placement decisions by the court was later rejected in *Nicaise v. Sundaram*, 244 Ariz. 272, 281 ¶ 29 (App. 2018) (abrogated on other grounds) because the court lacks statutory authority to make substantive legal decisions for parents who are unable to agree. Instead, a court should determine which parent has authority to make education choices under the best-interests factors — which includes evaluating parents' proposed education plans — but not make the decision itself. *Nicaise*, 244 Ariz. at 281 ¶ 29. The court did so here by evaluating the best-interests factors and then assigning Mother final decision-making authority. Therefore, the court did not err by not applying the factors in *Jordan*.

¶14        Father further argues that the family court's decision violates his constitutional rights by forcing Catholicism onto his children and himself. To start, the court granted joint legal decision-making authority to both parties, only awarding final decision-making on education to Mother. As Mother concedes, Father is free to raise the children in any religion or secularly during his parenting time.

¶15        Moreover, the court may not preclude a religious school simply because it is religious. *Jordan*, 221 Ariz. at 591 ¶ 25. When fit parents disagree, the court is tasked with balancing the best-interests factors to determine which parent should have the final say on issues such as education and religion. *Id.* at 590 ¶ 22; A.R.S. § 25-401(3). "There is no constitutional impediment" to the court's permitting one parent to enroll

the child in a religious school over the other parent's objection when enrollment is in the child's best interests. *Jordan,* 221 Ariz. at 592 ¶ 31.

## II.    Attorney's Fees

**¶16**         Father next challenges the family court's award of attorney's fees to Mother. Because § 25-415 uses the mandatory "shall," we defer to the court's findings of fact unless clearly erroneous but review the court's interpretation and application of statutes de novo. *Cf. Ariz. Republican Party v. Richer*, 257 Ariz. 237, 242 ¶¶ 9, 10 (2024) (applying a mixed standard of review to the mandatory unjustified action sanction statute § 12-349).

**¶17**         Section 25-415(A)(1) requires the family court to sanction a party for costs and attorney's fees when that party knowingly presents a false claim of domestic violence or child abuse. As relevant here, domestic violence includes sexual assault of a minor by someone who resides in the same home.  A.R.S. §§ 25-415(A)(1), -403.03(A), 13-3601(A), -705.

**¶18**         Here, the family court sanctioned Father for knowingly presenting a false claim that Stepfather molested the younger child. The record supports the court's finding. The police and court-appointed advisor found no evidence of inappropriate acts. Mother and Stepfather continuously denied any co-sleeping since Father made the original accusation a year before trial. Notably, Father told the court his concerns the day after asking the children's therapist how to keep Mother from getting final decision-making authority. *See* A.R.S. § 25-403.03 ("[J]oint legal decision-making shall not be awarded if the court makes a finding of the existence of significant domestic violence.").

**¶19**         Father argues on appeal that he had no malicious intent in making the sexual abuse allegation, though he would have "handle[d] things differently." The family court, however, found that he leveled the accusation to get final decision-making authority knowing the accusation was false. We defer to the court's determination of credibility and weight given to conflicting evidence. *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284 ¶ 20 (App. 2019). Thus, the court did not err by sanctioning Father under § 25-415(A)(1).

## CONCLUSION

**¶20** We affirm. Mother requests her attorney's fees on appeal pursuant to A.R.S. § 25-324 which authorizes a fee award after considering the disparity in financial resources and the reasonableness of the parties' positions in the litigation. We grant Mother's request upon compliance with Arizona Rule of Civil Appellate Procedure 21. We also award Mother her costs as the successful party on appeal. *See* A.R.S. § 12-341.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR